IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM GROS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 5510 |
| | ) | |
| MIDLAND CREDIT MANAGEMENT and | ) | |
| FORD MOTOR CREDIT COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff William Gros ("Gros") brings this lawsuit against defendants Midland Credit Management, Inc. ("MCM") and Ford Motor Credit Company ("Ford Credit") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, *et seq.*, common law fraud, common law slander of credit, and civil conspiracy. Before the court is Ford Credit's Motion to Dismiss Counts II, III, IV and V of Plaintiff's Amended Complaint, (Dkt. No. 40), which was later joined by MCM as it pertains to the civil conspiracy claim.

For the reasons stated below, defendants' Motion to Dismiss is granted in part and denied in part. Defendants' Motion to Dismiss Count II is denied. Defendants' Motion to Dismiss Counts III, IV and V is granted. Counts III and V are dismissed with prejudice; Count IV is dismissed without prejudice. Gros is granted leave to file a Second Amended Complaint on or before September 25, 2007, consistent with this order, for purposes of pleading his actual

1

damages with specificity in regards to Count IV, should he choose to do so.

## PRELIMINARY MATTERS

At the outset of its analysis, the court addresses Gros' untimely filing of his responsive brief. On March 13, 2007, the court set a briefing schedule on Ford Credit's motion to dismiss, according to which Gros' response was to be filed by April 17, 2007. Without explanation, notice, or seeking leave of the court for an extension, or for leave to file instanter, Gros filed his responsive brief three days late, on April 20, 2007. Because the court prefers to rule on the merits of a case, it will overlook Gros' procedural defect, finding no prejudice to the defendants at this point in the proceedings. However, Gros is hereby put on notice that any further failure to timely file pleadings, briefs or other documents in this case, or to seek leave of the court for an extension of time in which to file, may result in such documents being stricken from the record. Gros is further instructed that he must include references to specific page numbers when citing case law in future briefings before the court.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint generally need not contain more than "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (May 21, 2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). So long as the factual allegations in the complaint "raise a right to relief above the speculative level," the complaint will withstand a 12(b)(6) challenge. *Twombly*, 127 S. Ct. at 1965. In conducting its analysis, the court assumes that all well-pleaded allegations in the complaint are true. *Twombly*,

127 S. Ct. at 1965.  However, if a complaint includes facts that undermine its own allegations, a plaintiff can plead himself out of court.  *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006).  Any exhibits attached to a complaint are considered to be a part of the pleadings.  *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005).

BACKGROUND

The court accepts as true the following facts, as alleged by Gros.  On January 4, 2002, Gros entered into a "Red Carpet Lease End Extension Agreement" ("lease agreement") with Westgate Lincoln Mercury, a car dealership in Lombard, Illinois, and Ford Credit.  The subject matter of the lease agreement was a 1999 Lincoln Town Car.  When Ford Credit later refused to sell the subject car to Gros at the stated contract price, Gros filed suit against both Westgate Lincoln Mercury and Ford Credit in the Circuit Court of Cook County.[1]

Gros contends that the Circuit Court of Cook County ultimately found "that Ford Motor Credit had no right to any additional funds from the plaintiff, William Gros, with respect to the Red Carpet Lease Extension Agreement or in any manner with respect to the 1999 Lincoln Town Car."  (Am. Compl. ¶ 23).  According to Gros, the court "ruled in favor of Gros and dismissed Ford Motor Credit's counterclaim in the suit 'with prejudice' and ruled that Gros owed no money to Ford Motor Credit Company."  (Am. Compl. ¶ 15).  In support of this argument, Gros attaches an order from the Circuit Court stating:

> IT IS ORDERED HEREBY: that Ford Motor Credit Company's motion for set-off is granted in the amount of $35,000 judgment on

---

[1] The Amended Complaint states two different case numbers in connection with the state lawsuit: 02 L 520 and 03 L 520.  Gros refers to the case as *Gros v. Ford Motor Credit Company, et al*.

> Count III and in the amount of $10,000 judgment on Count I against the amount of settlement already paid by the other defendant, and It So [sic] Further Ordered that Ford Motor Credit Company's counterclaim is dismissed with prejudice and without costs *nunc pro tunc* September 20, 2005.

(Am. Compl., Ex. D). The court order is dated July 27, 2006, and is identified as case number 03 L 000520.

Gros also attaches the 24-page trial transcript of witness Laurie Rizzo ("Rizzo"), Dealer Service Supervisor for Ford Credit. (Am. Compl., Ex. C). Although Gros does not cite directly to the transcript, it appears that Rizzo was the final witness in the Circuit Court case, with both parties resting after her testimony. (*See* Ex. C at 40-41). At that point in the proceedings, the transcript identifies an off-the-record discussion, in which the court apparently recognized the defendant's right to voluntarily accept a dismissal with prejudice. (*See* Ex. C at 42). The transcript does not indicate that the defendant actually asserted this right at that time. The transcript is dated September 20, 2005, and is identified as case number 02 L 520.

Gros alleges that, despite the court's ruling in his favor, Ford Credit nevertheless falsely represented to Midland Funding, LLC (a/k/a/ MCM) that Gros owed money to Ford Credit and sold the non-existent debt to MCM, knowing that MCM would attempt to collect the debt from Gros. MCM has, in fact, made various attempts to collect the debt from Gros. These attempts include two letters, dated May 26, 2006 and July 21, 2006, and multiple phone calls between May 26, 2006 and July 21, 2006. (Am. Compl. ¶¶ 11-14, Ex. A & Ex. B).

### Count I – Fair Debt Collection Practices Act

Count I of the Amended Complaint is brought against MCM only, setting forth alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(e)(2). The motion before the court does not concern this count.

Count II – Illinois Consumer Fraud and Deceptive Business Practices Act

In Count II of his Amended Complaint, Gros alleges that Ford Credit and MCM violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 (the "Act"). Section 10a(a) of the Act creates a private cause of action for violations of the statute's provisions. 815 Ill. Comp. Stat. 505/10a(a). "To prove a private cause of action under section 10a(a) of the Act, a plaintiff must establish: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005).

Ford Credit argues that the Act does not apply to the facts of this case, because the alleged misrepresentation necessarily took place outside of Illinois. In support of this assertion, Ford Credit attaches the affidavit of Lynne Niepage ("Niepage"), Performance and Debt Sale Manager for Ford Credit, who attests that the sale of Gros' debt was negotiated between her office in Mesa, Arizona and a representative of Encore Capital Group (parent company to MCM) in San Diego, California. (See Dkt. No. 41, Ex. A). Ford Credit cites *Avery* for the proposition that the Act does not apply to fraudulent transactions which occur outside the state of Illinois. (Dkt. No. 41 at 4).

The court in *Avery* specifically found that "the General Assembly intended [a] broader

5

understanding of an in-state transaction," and held that the Act will apply whenever "the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery*, 835 N.E.2d at 853-54. *Avery* instructs courts to consider the totality of the circumstances in determining whether the disputed transaction occurred "primarily and substantially" in Illinois. *Id.* at 854. It is therefore incorrect to focus on only one aspect of the disputed transaction. Ford Credit's argument discounts the importance of such factors as Gros' residence, the location of the alleged harm, the site of Gros' dealings with Ford Credit, the Illinois court case, and the site of Gros' communications with MCM — all of which are "circumstances relating to [the] disputed transaction." *Id.* Furthermore, because Niepage's affidavit goes beyond the scope of Gros' Amended Complaint, the court will not consider this evidence in addressing Ford Credit's Motion to Dismiss. *See Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 479 (7th Cir. 2002). At this point in the proceedings, based on the allegations in Gros' Amended Complaint, the court declines to find that the circumstances surrounding Gros' claim occurred primarily and substantially outside of Illinois.

Next, Ford Credit argues that Gros has failed to state a claim for relief under the Act because Gros admits that he was never deceived by any representation made by Ford Credit or any claims asserted by MCM. As stated by the Supreme Court of Illinois, "in a cause of action for fraudulent misrepresentation brought under the Consumer Fraud Act, a plaintiff must prove that he or she was actually deceived by the misrepresentation in order to establish the element of proximate causation." *Avery*, 835 N.E.2d at 861. In other words, "it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, 'in some manner, deceived' by the misrepresentation." *Id.* (quoting *Oliveira v. Amoco Oil Co.*, 776

6

N.E.2d 151, 164 (Ill. 2002)). Although indirect deception can occur, as would be the case if misleading advertising deceived a builder, who in turn deceived a homeowner, *see Shannon v. Boise Cascade Corp.,* 805 N.E.2d 213, 218 (Ill. 2004), it is still required that the plaintiff (the homeowner, in this example) be deceived. *Id.*

In this case, the Amended Complaint makes clear that Gros did not accept the false assertion made to him by MCM that Gros was indebted to Ford Credit. Rather, Gros alleges that he repeatedly informed MCM "that he owed no debt to Ford Motor Credit Company and disputed the debt's existence . . . explain[ing] that a court of law had found in his favor regarding the debt in a lawsuit concluded in 2005." (Am. Compl. ¶¶ 12-13). Because Gros was not deceived by MCM's misrepresentation, he cannot state a claim for fraudulent misrepresentation under the Act.

However, recovery may also be had under the Act for conduct that is unfair. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002) (citing *Saunders v. Michigan Ave. Nat'l Bank*, 662 N.E.2d 602 (Ill. App. Ct. 1996)). In determining whether a defendant's conduct should be deemed unfair, courts are to consider "the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 805 Ill. Comp. Stat. 505/2. The Federal Trade Commission, in turn, considers the following factors relevant to the question of fairness: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson*, 775 N.E.2d at 961 (citing *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972)) ("the *Robinson* factors"). The Supreme Court of Illinois has explained that, "All three criteria do not need to be satisfied to

support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 775 N.E.2d at 961 (quoting *Cheshire*, 612 A.2d 1130, 1143-44 (Conn. 1992)).

In its Motion to Dismiss, Ford Credit mistakenly relies on *Saunders* for the proposition that "all three elements must be present for a finding that the act is 'unfair.'" (Dkt. No. 41 at 6). As discussed above, this is not the correct legal standard. In fact, the Supreme Court of Illinois specifically rejected this approach in *Robinson*. 775 N.E.2d at 961 ("Although the holding in *Saunders* seems to suggest that all three prongs of the *Sperry* test must be met, that is not an accurate statement of plaintiffs' burden."). Ford Credit argues that, because Gros "does not and cannot claim that either Ford Credit's or MCM's conduct was so oppressive at [sic] to force him into submission.," Gros cannot state a claim for unfair conduct under the Act. (Dkt. No. 41 at 6-7) (citing *Saunders*, 662 N.E.2d at 608-09). Because Ford Credit fails to address the fairness of its conduct in light of the other two *Robinson* factors, Ford Credit's Motion to Dismiss Count II on these grounds is denied.

Because Ford Credit has not shown that the conduct complained of occurred primarily and substantially outside of Illinois or that it was not "unfair," Ford Credit's Motion to Dismiss Count II is denied.

### Count III – Common Law Fraud

In Count III of his Amended Complaint, Gros contends that the actions of Ford Credit constitute common law fraud under Illinois law. In order to state a valid cause of action for common law fraud, Gros must ultimately prove "(1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement

8

induce the plaintiff to act; (4) the plaintiff's reliance on the statement; and (5) the plaintiff's damages resulting from reliance on the statement." *Suburban 1, Inc. v. GHS Mortgage, LLC*, 833 N.E.2d 18, 21 (Ill. App. Ct. 2005). As discussed above, the Amended Complaint makes clear that Gros did not rely on or otherwise accept Ford Credit's (or MCM's) false assertion that Gros was indebted to Ford Credit. Because Gros did not rely on the alleged false statement, he cannot assert a cause of action for common law fraud. Count III is therefore dismissed with prejudice.

## Count IV – Common Law Slander of Credit

In Count IV of his Amended Complaint, Gros alleges that both MCM and Ford Credit committed common law slander of credit by reporting his non-existent debt to various credit reporting agencies. Under Illinois law, plaintiffs asserting defamation claims may proceed on a theory of defamation *per se* (if the harm caused by the defendant's statement is so obvious that damages may be presumed) or defamation *per quod* (if extrinsic facts are needed to prove the defamatory nature of the defendant's statement). *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003). Defamation *per se* is limited to statements regarding "(1) commission of a criminal offense; (2) infection with a venereal disease; (3) inability to perform or want of integrity in the discharge of duties of public office; (4) fornication or adultery; or (5) words that prejudice a party in her trade, profession, or business." *Id.* at 924. Statements impugning an individual's creditworthiness constitute defamation *per quod*. *See Dornhecker v. Ameritech*, 99 F. Supp. 2d 918, 933 (N.D. Ill. 2000) (noting "the defamatory character of the statement is not apparent on its face," where defendant allegedly published false statements about plaintiffs' credit history to collection agencies and credit reporting agencies).

9

In order to allege an action for defamation *per quod* in federal court, Gros must plead actual damages in accordance with Illinois law and Federal Rule of Civil Procedure 9(g). *Muzikowski*, 322 at 924. In this case, Gros has alleged that he has suffered "out-of pocket expenses, loss of time, aggravation and inconvenience and emotional distress" as well as suffering "actual damages in that Plaintiff's credit was damaged [and] Plaintiff has been caused aggravation and inconvenience and distress as a result of Ford Motor Credit's and MCM's actions." (Am. Compl. ¶¶ 32, 44). Such general allegations are not sufficient to satisfy the special pleading requirements of Illinois law pertaining to claims of defamation *per quod*. "Under Illinois law, a plaintiff asserting a *per quod* defamation claim must not only plead special damages, he must set forth extrinsic facts to satisfy the *per quod* action." *Dornhecker*, 99 F. Supp. 2d at 933 (citing *Taradash v. Adelet/Scott-Fetzer Co.*, 628 N.E.2d 884, 888 (Ill. App. Ct. 1993)). As in *Dornhecker*, Gros "never alleges any *facts* suggesting that his reputation for creditworthiness was impaired, or that he applied for and was denied credit." *Id.* (emphasis added).

Gros directs the court to *Bruck v. Cincotta*, 371 N.E.2d 874 (Ill. App. Ct. 1977), in support of his claim that "it is enough to allege distress and out-of-pocket loss." (Dkt. No. 44 at 8). However, the court in *Bruck* specifically noted that general allegations of injury to reputation, substantial economic loss, ill health, emotional distress, loss of business profits, or loss of clientele have each been found insufficient to support allegations of actual damages. *Bruck*, 371 N.E.2d at 879-80. In *Bruck*, the allegations that "(P)laintiffs have been greatly injured in their credit and reputation, and certain business associates have stopped doing business with plaintiff for a period of time, and prospect of [sic] purchasers of buildings from the

10

plaintiff have been unwilling to do business with plaintiff and will be so induced in the future" were found insufficient to support special damages. *Id.* at 880. Gros' allegations likewise suffer from a lack of specificity and do not sufficiently support his claim of defamation *per quod*.

Gros informs the court that he is in a position to supply further details of his actual damages, if needed. (Dkt. No. 44 at 9). Although Gros was already afforded an opportunity to file an Amended Complaint at a time when he was on notice of Ford Credit's argument, Gros did not have the benefit of the court's ruling at that time. The court therefore dismisses Count IV without prejudice and grants Gros leave to file a Second Amended Complaint for purposes of pleading his actual damages with specificity, should he choose to do so. Gros' Second Amended Complaint is to be filed on or before September 25, 2007, consistent with this order.

## Count V – Civil Conspiracy

Finally, in Count V of his Amended Complaint, Gros alleges that both defendants engaged in civil conspiracy, in that Ford Credit conspired with MCM "to collect the debt that did not exist and thereby participated in the unlawful harassment and collection efforts against William Gros." (Am. Compl. ¶ 49).

To state a claim for civil conspiracy under Illinois law, a plaintiff must allege (1) an agreement for the purposes of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act committed by one of the co-conspirators in furtherance of the agreement. *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999). While a conspiracy claim by itself "is not something that Rule 9(b) of the Federal Rules of Civil Procedure requires be proved with particularity," *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006), a conspiracy claim will be subject to Rule 9(b)'s heightened pleading

11

requirements if the conspiracy is "premised upon a course of fraudulent conduct." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Ford Credit relies upon *Borsellino* in arguing that Gros has failed to plead Count V with sufficient particularity under Federal Rule of Civil Procedure 9(b).[2]

In *Borsellino*, the Seventh Circuit held that the pleading requirements of Rule 9(b) applied to the plaintiffs' claim for civil conspiracy because the purpose of the alleged conspiracy was "to commit the fraud" and the plaintiffs' theory of fraud "pervades their entire case." *Id.* However, the court also specifically noted that "whether [Rule 9(b)] applies will depend on the plaintiffs' factual allegations." *Id.* In this case, the only agreement alleged by Gros is "there was an agreement whereby Ford Motor Credit Company sold its purported debts allegedly owed by William Gros to Ford Motor Credit to Midland Credit Management." (Am. Compl. ¶ 45). Of note, Gros does *not* allege that MCM knew the debt was not actually owed by Gros,[3] nor does Gros allege that Ford Credit and MCM conspired together to defraud him. Because the underlying agreement is not premised on fraudulent conduct, the heightened pleading requirements of Rule 9(b) do not apply to Count V.

---

[2] Ford Credit argues that *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), "makes clear the heightened pleading requirement to satisfy Fed.R.Civ.Pro. 9(b)." (Dkt. No. 50 ¶ 4). This court disagrees, as the *Twombly* Court specifically noted that it was not applying a heightened pleading standard to the plaintiffs' claims in that case. *Twombly*, 127 S. Ct. at 1973, n.14. To the extent that *Twombly* redefined the pleading requirements of Rule 8(a)(2), this court has incorporated these changes in its statement of legal standards applicable to a motion to dismiss.

[3] In his Response, Gros contends that he has alleged "that both Defendants know that their acts were unlawful, as the debt was deemed invalid by the Circuit Court of DuPage County." (Dkt. No. 44 at 9). Gros cites to paragraph 46 of his Amended Complaint in support of this contention, but paragraph 46 does not allege that MCM had any knowledge of the Circuit Court's ruling. (Am. Compl. ¶ 46).

Under Federal Rule of Civil Procedure 8(a)(2), Gros need only set forth "a short and plain statement of the claim showing that [he] is entitled to relief." In other words, the allegations "must plausibly suggest that the plaintiff has a right to relief." *E.E.O.C. v. Concentra Health Services, Inc.*, No. 06-3436, 2007 WL 2215764, at *2 (7th Cir. Aug. 3, 2007) (citing *Twombly*, 127 S. Ct. at 1973, n.14). However, relief may be denied and a claim dismissed if a plaintiff has plead himself out of court, such that "it would be necessary to contradict the complaint in order to prevail on the merits" of the asserted claim. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006). That is the case here. Civil conspiracy requires an agreement "for the purposes of accomplishing either an unlawful purpose or a lawful purpose by unlawful means." *McClure*, 720 N.E.2d at 258. As noted above, Gros does not allege that MCM knew that the debt it sought to collect was not actually owed by Gros. In fact, Gros alleges that Ford Credit (1) falsely represented to Midland Funding, LLC that Gros was in debt to Ford Credit, and (2) fraudulently concealed the Circuit Court's ruling from Midland Funding, LLC. (Am. Compl. ¶¶ 24, 27(C)). "Civil conspiracy is an intentional tort and requires proof that a defendant 'knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner.'" *McClure*, 720 N.E.2d at 258 (citing *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888 (1994)). According to the factual allegations of Gros' Amended Complaint, MCM could not have knowingly participated in a scheme to collect an unlawful debt, as the debt's unlawful nature was hidden from MCM. Count V is thus dismissed with prejudice for failure to state a claim for civil conspiracy under Illinois law.

<u>Specificity of the Fraud Allegations</u>

13

In the interest of completeness, the court notes that the parties have also briefed the question of whether Counts II and III were plead with the necessary particularity to satisfy Rule 9(b).[4] It is by now well-settled that a complaint alleging fraud must provide "the who, what, when, where, and how" of the alleged fraudulent action, so as to avoid "the great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d at 507 (citations omitted). "A complaint alleging a violation of the Illinois Fraud Act must be pled with the same particularity and specificity as that required under common law fraud under Rule 9(b)." *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 731 (N.D. Ill. 2005) (citations omitted).

In this case, the court finds that Gros has sufficiently alleged detailed factual allegations regarding Ford Credit's alleged fraud, so as to satisfy the pleading requirements of Rule 9(b). Gros alleges "who" — "Ford Motor Credit Company . . . its agents and employees" (Am. Compl. ¶ 27); "what" — made continuing misrepresentations and omissions of fact when selling Gros' purported debt to MCM (Am. Compl. ¶¶ 27(A)-(C)); and "when" — "on or before 5-26-05" (Am. Compl. ¶ 27) (presumably Gros meant 5-26-06, the date that MCM sent its first dunning letter). As in *Barr Co. v. Safeco Ins. Co. of Am.*, "defendants are not left guessing as to the outlines of the fraud, its purposes, or the critical facts which are purportedly misrepresentations." *Barr Co. v. Safeco Ins. Co. of Am.*, 583 F. Supp. 248, 259 (N.D. Ill. 1984) (citing *Adair v. Hunt Int'l Resources Corp.*, 526 F. Supp. 736, 744 (N.D. Ill. 1981)). The court thus declines to dismiss Count II of the Amended Complaint on the grounds that it was not plead

---

[4] This, despite Ford Credit's initial acknowledgment that it "did not raise the issue of F.R.Civ.P. 9(b) in the motion to dismiss Counts II and III of the Complaint." (Dkt. No. 41 at 10, n.2).

with sufficient particularity.

## CONCLUSION

For the reasons stated above, defendants' Motion to Dismiss, (Dkt. No. 40), is granted in part and denied in part. Defendants' Motion to Dismiss Count II is denied. Defendants' Motion to Dismiss Counts III, IV and V is granted. Counts III and V are dismissed with prejudice; Count IV is dismissed without prejudice. Gros is granted leave to file a Second Amended Complaint on or before September 25, 2007, consistent with this order, for purposes of pleading his actual damages with specificity in regards to Count IV, should he choose to do so.

ENTER:

_JAMES F. Holderman_
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: September 10, 2007