IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM GROS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06 C 5510 |
| ) | |
| MIDLAND CREDIT MANAGEMENT, INC., and ) | |
| FORD MOTOR CREDIT COMPANY, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

In this lawsuit, plaintiff William Gros ("Gros") seeks damages related to defendant Midland Credit Management, Inc.'s ("MCM") efforts to collect on a non-existent $3,690.61 debt ("the Debt") originally owed by Gros to defendant Ford Motor Credit Company ("Ford Credit"). Gros also seeks damages related to the sale of the Debt by Ford Credit to Midland Funding, LLC, which precipitated MCM's collection efforts. Gros's only remaining claims are against MCM for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (Count I) and against MCM and Ford Credit for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, *et seq.* (Count II), all other claims having been dismissed with prejudice. (*See* 9/10/2007 Order, Dkt. No. 56; 7/22/2008 Order, Dkt. No. 107.) Now before the court is MCM's Motion for Summary Judgment. (Dkt. No. 104.) For the reasons set forth below, MCM's motion is granted and judgment is entered in favor of MCM on Counts I and II.

1

BACKGROUND

When ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmovant's favor. *Omega Healthcare Investors, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 857 (7th Cir. 2007). The following undisputed facts are construed in the light most favorable to Gros.

In January 1999, Gros opened an account with Ford Credit to lease a Lincoln Town Car. (Def.'s L.R. 56.1(a)(3) Stmt. ¶ 5.) The lease was for 26 months, with monthly payments of $598.53. (*Id.*) Gros entered into a six-month extension of his lease in January 2002. (*Id.* ¶ 6.) Sometime in 2003, Gros filed a lawsuit in the Circuit Court of DuPage County, Illinois, against Ford Credit, alleging that Ford Credit had refused to sell Gros the vehicle at the contract price. (*Id.* ¶ 7; Pl's Resp. to Def.'s L.R. 56.1(a)(3) Stmt. ¶ 7; Pl.'s L.R. 56.1(b)(3)(C) Stmt. ¶ 3.) Ford Credit also filed a counterclaim against Gros in the same state lawsuit. (Pl.'s L.R. 56.1(b)(3)(C) Stmt. ¶ 3.) On September 20, 2005, Ford Credit's counterclaim was dismissed with prejudice, and the circuit court held that Ford Credit had no right to additional funds from Gros. (Def.'s L.R. 56.1(a)(3) Stmt. ¶ 7; Pl.'s L.R. 56.1(b)(3)(C) Stmt. ¶ 3-4.)

In April 2006, Midland Funding, LLC ("Midland Funding") purchased the non-existent Debt from Ford Credit. (Def.'s L.R. 56.1(a)(3) Stmt. ¶ 8.) MCM is the collection arm of Midland Funding. (*Id.* ¶ 3.) On May 19, 2006, MCM sent a letter to Gros, stating that the current owner of Gros's Ford Credit US account was Midland Funding, and that MCM ("a debt collection agency") was attempting to collect on a $3,690.61 balance owed to Midland Funding. (*Id.* ¶ 8.) The May 19, 2006, letter states:

> Dear WILLIAM F. GROS,
>
> The purpose of this letter is to introduce Midland Funding LLC as the new owner of the above referenced account and Midland Credit Management, Inc. ("MCM"), a debt collection company, is [sic] the servicer of this obligation. Accordingly, all communication regarding the account should be addressed to MCM as servicer for Midland Funding LLC and not the previous owner.
>
> The records transferred with your FORD CREDIT US account reflect that you are obligated on this account, which is in default with a Current Balance of $3,690.61. As the owner of the account, but subject to the rights described in the following three paragraphs, Midland Funding LLC is entitled to be paid the entire current balance due which should be remitted to MCM.
>
> Unless you notify MCM within thirty (30) days of receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid.
>
> If you notify MCM in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment.
>
> If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.
>
> To discuss this debt, please contact us toll free at (800) 935-4566.
>
> Midland Credit Management, Inc.
> (800) 935-4566
>
> Please see reverse side for important information.

(*Id.* ¶ 9; 6/20/2008 Gros Dep., Ex. 21.) Gros read the May 19, 2006, letter, but did not notify MCM in writing within thirty days that he disputed any portion of the Debt. (Def.'s L.R. 56.1(a)(3) Stmt. ¶ 10.)

On May 26, 2006, MCM sent a second letter to Gros. (*Id.* ¶ 11.) The May 26, 2006 letter again stated that the current owner of Gros's Ford Credit US account was Midland Funding and that the "Current Balance" due on the account was $3,690.61. (*Id.*) The May 26, 2006, letter

3

further stated:

> Dear WILLIAM F. GROS,
>
> Midland Credit Management, Inc. is the SERVICER of the above-mentioned FORD CREDIT US account. This is a demand for payment. Please include a check or money order for the Current Balance due. Once the balance has been received the credit reporting agencies will be notified that the account is paid.*
>
> Please do not hesitate to contact me at (800) 265-8825, Ext. 3590 if you have any questions.
>
> Please understand that this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.
>
> Sincerely,
>
> Nichole Hiemenz X3590, C3-41
> (800) 265-8825 3590
> Midland Credit Management, Inc.
>
> *Your credit report will not be updated if the federal reporting period has expired.

(*Id.*; 2d Am. Compl., Ex. A.) The May 26, 2006, letter included a perforated payment stub at the bottom of the letter.

Also on May 26, 2006, Gros received a phone call from MCM. (Def.'s L.R. 56.1(a)(3) Stmt. ¶ 12.) In the May 26, 2006, phone call, a representative from MCM told Gros that MCM was collecting a sum of money, which Gros recognized "as coming from Ford Motor Credit." (*Id.* ¶ 12; Pl.'s L.R. 56.1(b)(3)(C) Stmt. ¶ 6.) Gros told the MCM representative that he owed no money to Ford Credit.[1] (Pl.'s Pl.'s L.R. 56.1(b)(3)(C) Stmt. ¶ 7.) Gros received a second phone

---

[1] MCM denies that there is admissible evidence in the record regarding the content of the May 26, 2006, phone conversation. (Def.'s Resp. to Pl.'s L.R. 56.1(b)(3)(C) Stmt. ¶ 7.) Without ruling on the admissibility of the evidence at this point in the litigation, the court notes that under the Federal Rules of Evidence, Gros's recollections of the May 26, 2006, phone conversation may be admissible as admissions by a party-opponent or recorded recollections. F.R.E.

call from MCM sometime between May 26, 2006, and July 24, 2006. (Def.'s L.R. 56.1(a)(3) Stmt. ¶ 13.) Gros again told the MCM representative that he did not owe the money. (Pl.'s L.R. 56.1(b)(3)(C) Stmt. ¶ 9)[2]

On July 21, 2006, MCM sent a third letter to Gros. (Def.'s L.R. 56.1(a)(3) Stmt. ¶ 14.) The July 21, 2006, letter also stated that the current owner of Gros's Ford Credit US account was Midland Funding and that the "Current Balance" due on the account was $3,690.61. (*Id.*) The July 21, 2006, letter further stated:

> Dear WILLIAM F. GROS,
>
> Midland Credit Management, Inc. has made several attempts to contact you regarding the following account:
>
> > **Current Owner**:   Midland Funding LLC
> > **Original Creditor**:   FORD CREDIT US
> > **MCM Account No**:   8516997448
> > **Current Balance**:   $3,690.61
>
> This letter is to inform you that Midland Credit Management Inc. is considering forwarding this account to an attorney with the intent to initiate legal action to satisfy the debt.
>
> Please contact our office immediately at (800) 939-2353 to make arrangements to pay this debt and prevent any legal action on your account.
>
> SEE REVERSE SIDE FOR IMPORTANT INFORMATION.
>
> Sincerely,
> Midland Credit Management, Inc.

---

801(d)(2), 802(5). Gros also may assert that he denied the Debt was payable during the May 26, 2006, phone conversation, as long as Gros does so for purposes of demonstrating that MCM was on notice of Gros's belief, and not for purposes of demonstrating that the Debt was in fact not payable. F.R.E. 801(c).

[2] The court applies the same analysis regarding the admissibility of the evidence in relation to all four phone calls initiated by MCM or its agents.

(*Id.* ¶ 15; 2d Am. Compl., Ex. B.) The July 21, 2006, letter also included a perforated payment stub at the bottom of the letter.

On July 24, 2006, Gros received a third collection phone call from MCM. (Def.'s L.R. 56.1(a)(3) Stmt. ¶ 17.) Gros again told the MCM representative that he did not owe the money. (Pl.'s L.R. 56.1(b)(3)(C) Stmt. ¶ 9)

On August 7, 2006, Gros sent a letter to MCM. (Def.'s L.R. 56.1(a)(3) Stmt. ¶ 18.) The August 7, 2006, letter stated:

> Please consider this my response to your letter to me dated July 21, 2006, demanding the sum of $3,690.61 from me. I dispute the debt with Ford Credit. My attorneys'[sic] name in this dispute is Norman H. Lehrer at 429 West Wesley Street, Wheaton, Illinois 60187 (630-462-0700).

(*Id.* ¶ 18; 6/20/2008 Gros Dep., Ex. 19.) This was the first time Gros contacted MCM in writing. (Def.'s L.R. 56.1(a)(3) Stmt. ¶ 19.) Gros never sent MCM a copy of the court opinion from the state court proceeding which stated that Gros owed no debt to Ford Credit. (*Id.* ¶ 20.)

On September 6, 2006, Gros received a phone call from a lawyer on behalf of MCM. (*Id.* ¶ 21.) Although there is little evidence in the record of what transpired during the September 6, 2006, phone call, it is undisputed that MCM's lawyer did not state that MCM was going to sue Gros. (*Id.*) Gros filed this lawsuit against MCM on October 11, 2006.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a motion for summary judgment has been filed, the burden shifts to the nonmovant to "show through specific evidence that a triable issue of fact remains on

issues on which he bears the burden of proof at trial." *Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001). When ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmovant's favor. *Omega Healthcare Investors, Inc.*, 475 F.3d at 857. The court is not to make credibility determinations or weigh conflicting evidence when ruling on a motion for summary judgment. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Ultimately, "the district court need[ ] only to decide whether, based on the evidence in the record, a material dispute of fact exist[s] that require[s] trial." *Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 914 (7th Cir. 2007). Summary judgment will be granted in favor of the moving party if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

ANALYSIS

1.  Violations of the FDCPA

In his claims brought under the Fair Debt Collection Practices Act ("FDCPA"), Gros alleges violations of 15 U.S.C. §§ 1692e(2)(A), 1692e(4), and 1692f.[3] Section 1692e states, in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of –
>     (A) the character, amount, or legal status of any debt;

---

[3] Gros has not alleged a separate claim for violations of §1692c(a)(2), which prohibits debt collectors from directly contacting parties who are represented by an attorney.

7

* * *

> (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

15 U.S.C. § 1692e(2)(A) and (4). Section 1692f prohibits "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

The court evaluates § 1692e and § 1692f claims through the eyes of the "unsophisticated consumer or debtor." *Durkin v. Equifax Check Servs., Inc.,* 406 F.3d 410, 414 (7th Cir. 2005) (citing *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564-66 (7th Cir. 2004)); *see also McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 759 (7th Cir. 2006) ("the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter"). "While the unsophisticated debtor is considered 'uninformed, naive, or trusting,' he is nonetheless deemed to possess 'rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences.'" *Durkin*, 406 F.3d at 414 (quoting *Fields*, 383 F.3d at 564). Where a collection letter is misleading or confusing on its face, a triable issue of fact exists which precludes summary judgment. *Sims v. GC Servs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006) (citing *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004)). However, "[a]bsent a showing that the face of the letter will precipitate such a level of confusion, the 'plaintiff must come forward with evidence beyond the letter and beyond [her] own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial.'" *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007) (quoting *Durkin*, 406 F.3d at 415). Such evidence

may consist of "carefully designed and conducted consumer survey[s]" or expert witnesses. *Durkin*, 406 F.3d at 415. Mere speculation that "the unsophisticated debtor *could* be confused" is not enough to survive summary judgment. *Sims*, 445 F.3d at 463 (emphasis in original).

A. Section 1692e(2)(A)

Under § 1692e(2)(A), a debt collector violates the FDCPA when it falsely represents "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). The relevant question for claims brought under § 1692e(2)(A) is whether an unsophisticated, but reasonable, consumer would objectively read MCM's communications as (falsely) implying that the Debt was still payable. *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003).

I. The May 2006 Communications[4]

The full text of the May 19, 2006, letter is set forth in the Background section, above. For the most part, this language mirrors the language prescribed by § 1692g(a). Nevertheless, the *Turner* court found that the use of such language could be a question of fact for the jury, in that it might falsely imply to an unsophisticated consumer that the Debt was due and owing, when it was not. *Turner*, 330 F.3d at 995, 998. Furthermore, unlike in *Turner*, MCM's collection efforts did not end after the May 19, 2006, letter was sent. Two more communications were initiated by MCM within the thirty-day validation period: a letter and a phone call,[5] both on May 26, 2006.

Collection efforts within the validation period are not prohibited under the FDCPA.

---

[4] Although Gros does not distinguish between the separate communications initiated by MCM, the court finds this distinction essential to a proper analysis of Gros's § 1692e(2)(A) claim.

[5] The FDCPA defines a "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

9

*Durkin*, 406 F.3d at 416. However, "the debt collector may not overshadow or contradict [the information required by § 1692g(a)] with other messages sent with the validation notice or within the validation period." *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518 (7th Cir. 1997)). Gros does not argue that any messages contained within the May 19, 2006, letter or the May 26, 2006, communications overshadowed or contradicted the § 1692g(a) language in this case.

Gros does argue, however, that MCM falsely represented that the Debt was owed. The Seventh Circuit has stated that "debt collector[s] [are] 'perfectly free' to demand payment and pursue collection efforts . . . within the validation period." *Durkin*, 406 F.3d at 416. There is a slight—but important—distinction between "demand[ing] payment and pursu[ing] collection efforts" and falsely representing that a debt is payable. This court declines to read *Durkin* to signify that, as a matter of law, debt collectors are ever free to falsely represent that a debt is payable when it is not. The court instead analyzes the May 2006 communications through the lens of *Turner* and the eyes of the unsophisticated consumer.

Before turning to *Turner*, however, the court addresses Gros's apparent argument that he is entitled to judgment as a matter of law. Gros's argument on this point states in its entirety as follows:

> MCM also is mistaken in arguing that Gros must present survey or expert evidence to show that a specific letter would be false, deceptive or misleading to the unsophisticated consumer. See generally, <u>Kort v. Diversified Collection Services, Inc.</u>, 270 F. Supp. 2d 1017 (N.D. Ill. 2003) (finding no need for survey evidence and granting summary judgment to plaintiff after finding that a collection letter was misleading on its face, and citing several Seventh Circuit Court of Appeals decisions for support). Indeed it would be difficult to construct any survey in this case as such a survey would need to account for the language of three letters and four phone calls.

(Pl.'s Resp. at 5-6.) To the extent Gros implies that the language employed by MCM in its May 2006 communications was misleading on its face, the court finds Gros's argument to be

10

underdeveloped. First, and most important, Gros makes no attempt to distinguish *Turner*'s conclusion that it is a question of fact whether certain language falsely implies that a debt is due and owing. Furthermore, Gros does not direct the court to any specific language employed by MCM in its May 2006 communications that falsely implies the Debt is still payable. (Pl.'s Resp. at 3 (arguing instead that "it was false to represent that [the Debt] was owed").) Finally, Gros does not describe what language in *Kort* (or the cases cited therein) was found to be misleading, or how that language is similar to the language employed by MCM in its May 2006 communications. (*Kort*, for example, addressed language that was found to be misleading as to the application of certain wage garnishment provisions of the Higher Education Act, 20 U.S.C. §§ 1071, *et seq*.) Without more, Gros has not demonstrated that he should prevail as a matter of law.[6]

As stated above, when a FDCPA claim cannot be resolved on the face of the communication, it is the plaintiff's burden to "come forward with evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial." *Durkin*, 406 F.3d at 415. In this case, Gros has presented no extrinsic evidence suggesting that the May 2006 communications would be confusing or misleading to an unsophisticated debtor, or that the language employed by MCM would suggest to an unsophisticated debtor that the Debt was still payable. This type of objective extrinsic evidence is necessary, in part, because "district judges are not good proxies for the

---

[6] Gros correctly argues that § 1692e(2)(A) creates a strict-liability rule such that "[d]ebt collectors may not make false claims, period." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). However, the *Randolph* court also reaffirmed that *Turner* remains the standard for "how these provisions of the FDCPA work." *Id.* at 728. In other words, *Turner* offers guidance on the question of how to determine *if* a debt collector has made a false claim.

11

'unsophisticated consumers' whose interests the statute protects." *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999). Furthermore, even if Gros claimed to have been misled into believing that the Debt was payable (which he has not), this type of subjective evidence would not be helpful in addressing the objective unsophisticated debtor standard. *Durkin*, 406 F.3d at 415. On the record before it, the court finds that Gros has failed to support his burden of demonstrating a triable issue of fact on the question of MCM's § 1692e(2)(A) liability as it relates to the May 2006 communications.

ii.     Remaining Communications

Although debt collectors are never free to falsely represent that a debt is payable, once the thirty-day validation period expires "the debt collector may assume that the debt is valid." *Durkin*, 406 F.3d at 416; *compare* 1692g(a)(3) (debt collector must notify consumer that, "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector") *with* 1692g(c) ("The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer."). It is undisputed that Gros did not dispute the Debt in writing within the thirty-day validation period. (Def.'s L.R. 56.1(a)(3) Stmt. ¶ 19.) Gros also makes no argument that any of MCM's post-May 19, 2006, communications overshadowed or contradicted the original May 19, 2006, validation notice, such that an unsophisticated consumer would have believed that he was not required to dispute the Debt in writing within thirty days of receipt of the May 19, 2006, letter. MCM was therefore entitled to assume the Debt was valid, and to proceed accordingly.

Because the court finds no disputed question of material fact regarding Gros's §

1692e(2)(A) claim, MCM's motion for summary judgment is granted as to this claim.

B.     Section 1692e(4)

MCM argues that Gros cannot prevail on his § 1692e(4) claim because there is no evidence "that MCM represented or implied that nonpayment of the Ford debt would result in Plaintiff's arrest or imprisonment, or the seizure, garnishment, attachment, or sale of any of Plaintiff's property or wages," nor has Gros submitted any extrinsic evidence to support his § 1692e(4) claim. (Def.'s Mem. at 14.) Gros does not respond to this argument, thus failing to demonstrate that a disputed material fact precludes summary judgment on this issue. *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001) (once a motion for summary judgment has been filed, the burden shifts to the nonmovant to "show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial"). MCM's motion for summary judgment is therefore granted in relation to Gros's claim under § 1692e(4).

C.     Section 1692f

Gros's Second Amended Complaint also alleges that MCM is liable under § 1692f for "failing to investigate Plaintiff's claim that he was not indebted to Ford Motor Credit." (2d Am. Compl. ¶ 20.) Section 1692f includes a non-exhaustive list of the types of unfair conduct prohibited under the FDCPA. (*See* 15 U.S.C. § 1692f(1)-(8).) Although § 1692f does not specifically list "failure to investigate" as an example of unfair collection activity, this does not automatically preclude Gros from recovering on his § 1692f claim. The Seventh Circuit has held that the unsophisticated debtor test applies to claims brought under § 1692f. *Turner*, 330 F.3d at 997. The court must therefore determine if Gros has produced evidence that MCM's conduct would be "an 'unfair or unconscionable means' of debt collection when directed toward an

13

unsophisticated but reasonable consumer whose debt had been discharged in [state court]." *Id.* at 998.

The court in *Turner* held that "a letter simply providing the information required by § 1692g(a) is not an unfair or unconscionable means of debt collection under § 1692f, even when the debt collector may have violated some other provision of the FDCPA." *Turner*, 330 F.3d at 998. In this case, however, MCM's communications involved much more than "simply providing the information required by § 1692g(a)." It may very well be that an unsophisticated consumer would feel that they were unfairly treated in receiving three letters and four phone calls about a debt that had already been discharged. Unfortunately, Gros has produced no extrinsic evidence to assist a jury in making a factual determination regarding an unsophisticated consumer's reaction to MCM's communications. Gros's own reactions to MCM's efforts to collect on the Debt are irrelevant. *Durkin*, 406 F.3d at 415. Once again, on this record, the court finds that Gros has failed to support his burden of demonstrating a triable issue of fact on this claim.

Without distinguishing *Turner*, the Seventh Circuit has recognized that advisory opinions by the Federal Trade Commission ("FTC") pursuant to 15 U.S.C. § 1692*l*(c) or FTC opinions in an enforcement proceeding under 15 U.S.C. § 1692*l*(a) can offer guidance on the subject of what conduct is "unfair" under § 1692f, suggesting that liability can also be found as a matter of law. *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007). Gros has not directed the court to any such FTC opinion, and the court is not aware of any. As in *Beler*, this court declines "to make rules in common-law fashion [or] to use § 1692f to enforce other legal rules." *Id.* Such rules "should be adopted (if at all) through the administrative process or a statutory amendment rather than judicial definition of the phrase 'unfair or unconscionable.'" *Id.*

at 474. Because Gros has set forth no argument that MCM's collection efforts were unfair as a matter of law, or evidence that a triable question of fact remains regarding the unsophisticated consumer's reaction to MCM's efforts to collect on the Debt, summary judgment is appropriate in MCM's favor on Gros's § 1692f claim.

2.   Violations of the ICFA

Gros also claims that MCM's collection efforts were unfair under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA"). (2d Am. Compl. ¶¶ 27(D), 29 (D), Dkt. No. 57.)[7] A plaintiff may prove unfair practices under the ICFA by demonstrating that the practice engaged in (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (citing *Fed. Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972)). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 775 N.E.2d at 961 (quoting *Cheshire Mortgage Serv., Inc. v. Montes*, 612 A.2d 1130, 1143-44 (Conn. 1992)).

Public policy is represented by existing statutes, common law, or some "other established concept of unfairness." *Sperry*, 405 U.S. at 244-45 n.5. Gros first argues that MCM's collection efforts offended public policy "by falsely representing that Gros owed money to Ford Credit

---

[7] In response to MCM's motion for summary judgment, Gros has abandoned his claim that MCM "unfairly reported the alleged debt to various credit reporting agencies." ((2d Am. Compl. ¶ 27(E); Pl's Resp. at 13 n.2). Gros also does not respond to MCM's argument regarding his claim that MCM "refus[ed] to report or honor the lawful rulings and order of courts of law in the State of Illinois," (2d Am. Compl. ¶¶ 27(E), 31(B)), thus waiving his right to present argument on this point.

15

when he owed no money," in violation of § 1692e of the FDCPA. This argument is unavailing, as the court has determined that judgment is appropriate in favor of MCM on Gros's § 1692e claim. Gros also directs the court to the Illinois Collection Agency Act for evidence of an Illinois public policy protecting consumers against abuse in the form of collection agencies "[m]isrepresenting the amount of the claim or debt alleged to be owed." 225 ILCS 425/9(a)(26). As discussed above, Gros has failed to carry his burden of proving there is a triable issue of fact on the question of whether MCM engaged in this type of misrepresentation; for example, Gros has never directed the court to specific language employed by MCM that unlawfully implied that the Debt was valid.

Gros further alleges that "it offends public policy for MCM to ignore Gros's repeated protest [sic] that he did not owe the money, for MCM to keep writing and calling him to ask for money, and for MCM to ignore Gros's letter telling MCM the name, address and phone number of his lawyer and instead have MCM's lawyer call and made another collection attempt." (Pl.'s Resp. at 8-9 (incorporated into ICFA claim at 14).) Gros does not articulate an established public policy that this conduct is alleged to have violated. For the most part, as discussed above, this conduct is condoned by the FDCPA under circumstances such as those in this case. However, it is undisputed that Gros sent MCM the name, address, and phone number of his attorney on August 7, 2006, and that Gros was contacted by a lawyer representing MCM on September 6, 2006. (Def.'s L.R. 56.1(a)(3) Stmt. ¶¶ 18, 21.) Viewing the evidence in the light most favorable to Gros, this serves as some evidence of a violation of federal public policy against abusive debt collection practices, as articulated in § 1692c(a)(2) of the FDCPA.

However, the court finds no evidence that MCM's collection practices were "immoral, unethical, oppressive, or unscrupulous." *Robinson*, 775 N.E.2d at 960. "Conduct is oppressive

16

only if it imposes a lack of meaningful choice or an unreasonable burden on its target."
*Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008); *see also Robinson*, 775 N.E.2d at 962.  In this case, all Gros had to do to stop receiving letters and phone calls from MCM was to dispute the validity of the Debt in writing within thirty days of the May 19, 2006 letter.  This is not an unreasonable burden for a consumer to bear.  Although debtors are not given a choice as to which collection agency will attempt to collect outstanding debts from them, in this situation Gros had the option of either complying with MCM's explicit request that he dispute the Debt in writing within the thirty-day verification period, or ignoring MCM's request—perhaps hoping that he could convince MCM over the phone to drop its collection efforts, or that MCM might cease its collection efforts on its own initiative.  The fact that Gros regretted choosing the latter course of action does not mean that he faced no option other than to endure harassment at the hands of MCM.

It is true that, even after Gros disputed the Debt in writing, Gros was forced to endure one further phone call from MCM's attorney.  However, the court finds this scant evidence of a "campaign to 'wear down' Gros, a retired citizen, . . . and force him to pay money."  (Pl.'s Resp. at 9.)  Gros has not argued that MCM's attorney employed any threatening or aggressive language in the September 6, 2006 phone call, that the attorney refused to listen to or believe Gros's explanation of the situation, or that the phone call was otherwise an unreasonable burden on Gros. Following this same reasoning, the court finds no evidence that MCM's collection practices are likely to "cause[ ] substantial injury to consumers."  *Robinson*, 775 N.E.2d at 960.

In context with the remainder of the undisputed material facts in this case, the court cannot find that MCM's collections practices were unfair as a matter of law, or that Gros has presented

sufficient evidence to survive summary judgment on this claim. *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008) ("The nonmoving party must show that there is evidence upon which a jury reasonably could find for him; that requirement is not met by producing only a 'mere scintilla' of evidence.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Judgement is therefore appropriate as a matter of law in favor of MCM on Gros's ICFA claim.

## CONCLUSION

For the reasons stated above, MCM's motion for summary judgment is granted and judgment is entered in favor of MCM on Counts I and II. MCM is dismissed as a defendant in this lawsuit.

        ENTER:

        _____
        JAMES F. HOLDERMAN
        Chief Judge, United States District Court

Date:   October 20, 2008